[No. 24106. *En Banc.* March 13, 1933.]

AGNES MEIER, *Respondent,* v. EDWARD W. MEIER, *Appellant.*[1]

*Burkey & Burkey,* for appellant.

BEALS, C. J.—Plaintiff instituted this action for the purpose of procuring a decree of divorce and a share of the property belonging to her husband and herself. After a hearing, the trial court entered an interlocutory order awarding the divorce to each of the parties and dividing their property between them. From this order defendant appeals, assigning error only upon the division of the property as made by the trial court.

[1] From an examination of the record, we are satisfied that, in granting a divorce to both wife and husband, the trial court did not err. In actions for divorce, the judgment of the superior court should receive especial consideration. The trial judge has the advantage of seeing the parties and their witnesses, can propound to them such questions as may be deemed material to a complete disclosure of all facts, has power to direct that additional witnesses be summoned, and occupies an unusually advantageous position in determin-

---

[1] Reported in 19 P. (2d) 929.

ing the questions presented for decision. An interlocutory order granting a divorce should not be reversed unless it very clearly appears that the trial court committed error which requires such action. We are satisfied that no such case is here presented, and that the record does not warrant reversal of the order granting a divorce.

The parties were married during the month of February, 1925. Appellant is a bookkeeper and respondent a stenographer. After her marriage, respondent continued in her employment at all times, save that, for the past two years or so, she has worked no more than half time. The trial court found that all the property of the parties was community in its nature, and divided the same between them on that basis. At the time of the divorce, the property was worth between six and seven thousand dollars, of which appellant received a substantial portion, although less than half.

Appellant, while conceding that the superior court exercises a large discretion in making such a division of property as is here presented, argues that the trial court failed to have sufficient regard to the merits of the parties and the source of the property which was being divided.

Careful examination of the record convinces us that no showing is made which requires reversal of the order entered by the superior court. While the award to respondent seems liberal, that court was in a better position than are we to determine the matter, and such an order as was here entered will not be overturned unless it clearly appears that the trial court failed to do substantial justice between the parties. It can not be held that such a showing is here made, and the judgment appealed from is affirmed.

MILLARD, MAIN, MITCHELL, HOLCOMB, and BLAKE, JJ., concur.

Parker, J. (concurring)—I concur in the affirmance of the interlocutory order in so far as it awards the divorce, because there is no assignment of error or argument of counsel challenging the order in that respect. I concur in the affirmance of the interlocutory order in so far as it settles the property rights of the parties, because I cannot see that the trial judge abused his discretion in that respect. This, as I see this appeal, is the only question we are here called upon to decide.

Tolman, J. (dissenting)—While I quite agree that, in actions for divorce, as in all matters of equity, the judgment of the trial court should be given great weight and be followed unless against the preponderance of the evidence or contrary to the law, yet, since the legislature alone may prescribe the grounds upon which the marital tie may be severed, the trial court and this court are alike limited and bound by the plain terms of the statute; and neither may disregard those terms or read into the statute grounds for divorce which the legislature in its wisdom has excluded.

Divorce is statutory only, and the statutory grounds for divorce, Rem. Rev. Stat., § 982, no longer include that somewhat indefinite provision permitting the granting of a divorce in cases where the court is satisfied that the parties can no longer live together. Under the present statute, the only possible ground upon which this decree can be sustained is subdivision 5 of § 982, *supra*, which reads:

"Cruel treatment of either party by the other, or personal indignities rendering life burdensome."

I see nothing in the evidence justifying a finding of cruelty, and the trial court made no such finding. The sole and only finding of fact upon which he based his decree is:

"That for more than one year last past the defendant has made no effort to conceal the fact that he has neither love nor affection for the plaintiff and has by numerous annoying acts and words made the homelife of plaintiff burdensome and that plaintiff has been guilty of like conduct toward defendant so that it is no longer possible for the parties to live together as husband and wife."

It seems to me that this finding must have been drawn with the old statute in mind, and for the purpose of complying with the indefinite provision already referred to, which was repealed by the amendment of 1921. I find therefore neither evidence nor any finding of fact which will support the decree.

A careful reading of all of the evidence convinces me that this is somewhat of an extreme case of divorce by agreement of the parties, rather than upon any ground mentioned in the statute.

The sole and only witness on the part of the plaintiff was the plaintiff herself, and all of her testimony upon the divorce issue is as follows:

"Q. Since the last three or four years or more has Mr. Meier made any effort to conceal the fact that he does not care for you? A. No, he has not. Q. And has by various annoying acts and words made the home life impossible? A. Yes, he has. Q. Without detailing what they were, that is the fact? A. Yes, sir. Q. To such an extent so that you separated the forepart of November, 1931? A. Yes, sir. Q. And have lived separate and apart ever since? A. Yes, sir. Q. You are both satisfied that you cannot resume the marital relation? A. Yes, sir."

On cross-examination, the only further evidence brought out on the divorce issue was the following:

"Q. When did you quit living with him? A. On the 2d of November, 1931. Q. You just walked out of the house? A. Yes, I did."

The defendant husband, as his defense or in support of his cross-complaint for divorce, wholly without support or corroboration by any other witness, testified as follows:

"A. My wife refused to take care of her duties at home like any other woman would naturally do. I would not have expected her to cook three meals a day or anything like that, but I did expect one once in a while. Q. In taking care of the home, was it customary for her to get breakfast for you? A. Never had a breakfast. Q. Where did you go for breakfast? A. Down town. Q. That was customary in your home? A. Absolutely, with the exception of a very few times, maybe on Sunday once in a while. Q. Would she keep things in the home so that you would be able to get meals? A. Never a thing in the home at all. Q. So that if you did make up your mind to get a meal at home, what did you do? A. Had to go to the store and buy. Q. She has testified that for a long period of time you had shown by your attitude toward her that you had no love for her; is that the fact? A. I do not think it is at all. I cannot understand how she figures that at all. I think it is just the opposite. Q. What has been your conduct toward her in the way of endeavoring to show affection toward her? A. I have been nice to her,—(interrupted). Q. And I will ask, what has been her attitude toward you with reference to that? A. I have tried to do everything I could out there to make the home comfortable; I would not quarrel with her; I would not start any arguments with her at all; tried to treat her as nice as any one could possibly. MR. LLOYD: Now, do you want to go into all these items? I made my examination as skimpy as I could. THE COURT: Of course he is asking for a divorce too. Q. She left you? A. Yes. Q. When? A. November 2d, last. Q. Did you endeavor to get her to return? A. I did. Q. And she refused? A. Absolutely; and I offered that she quit her job and take care of the home properly and she refused. Q. Was it your desire that she worked? A. No, it was not. I have told her many many times to quit her job and stay

at home. Mr. Lloyd: I suppose this is on your defense?
Mr. Burkey: Yes. Mr. Lloyd: Very well. Q. Was
she inclined to outbursts of temper against you? A.
Yes, she was. She had a bad temper and disposition,
and could not do a thing with her whatsoever. If
anything crossed her at all she would quit listening to
reason; it did not make any difference how I went at
her. Q. Do you think it possible under the present cir-
cumstances for you and her to get along? A. For my
part I made the best of it and in my opinion she has
made a mess of things, as she has; now it is impos-
sible.''

I find nothing else in the entire record bearing on the
divorce issue, and even if the bare, unsupported con-
clusion of the parties that they can no longer live to-
gether is to be accepted at its face value, still I see no
proof of cruelty, and nothing warranting the legal sev-
erance of the marital tie.

The desertion by the wife, if it be desertion, was of
only a few months' duration, and had not ripened into
ground for divorce when the action was commenced,
when the cross-complaint was filed, at the time of the
trial, or even when the case was first argued on appeal
in this court.

It is true that no error is assigned directly upon the
granting of a divorce to the wife, and none could be
assigned by the appellant upon the granting of a
divorce to him; but the errors that are assigned all
relate back to and are founded upon a divorce having
been awarded, because, except a divorce was granted,
the court could not have gone into the matter of a
property settlement. But, at any rate, the appeal is
from the entire decree, and brings the whole case here
for review, and this court is not so helpless as to be
compelled, under the circumstances here shown, to
affirm a decree of divorce which it feels was procured

by consent of the parties and not for any statutory cause.

The testimony of the husband far more nearly entitles him to relief than does that of the wife show cause on her part; but, taken at its best, with every intendment in favor of the interested party who gave the testimony, it shows only domestic problems of a not unusual sort which both parties had managed to bear for more than six years of life together, and such as, by means of mutual forbearance and mutual concessions, they ought to solve with reasonably satisfactory results to themselves.

In my opinion, the judgment appealed from should be reversed and the action dismissed.

STEINERT, J., concurs with TOLMAN, J.